Mariana P. Noli, CA State Bar No. 247369
mail@noli-ipsolutions.com

Gregory D. Butler, CA State Bar No. 331064
greg@noli-ipsolutions.com

NOLI IP SOLUTIONS, P.C.
5030 Bella Collina St.,
Oceanside, California 92056
Telephone: (442) 224-7490

Attorneys for Plaintiffs
MARTHA MARIA SANCHEZ QUIROZ
DON CLEMENTE, INC.
PASATIEMPOS GALLO, S.A. de C.V.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA MARIA SANCHEZ QUIROZ, a Mexican individual, DON CLEMENTE INC., a Texas Corporation, PASATIEMPOS GALLO S.A. de C.V., a Mexican Corporation<br><br>Plaintiffs,<br><br>v.<br><br>ALEJANDRO ARANDA CERVANTES, a United States individual; OSCAR ARANDA CERVANTES, a United States individual; GENERAL MERCHANDISE DISTRIBUTION, a California entity; John Doe 1-10<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br>(1) **Federal Trademark Infringement, 15 U.S.C. § 1114(1);**<br>(2) **Federal Unfair Competition, 15 U.S.C. §1125(a)(1)(a);**<br>(3) **Dilution, 15 U.S.C. § 1125(c);**<br>(4) **California Unfair Competition, Cal. Bus. & Prof. Code § 17200;**<br>(5) **Tortious interference** |

MARTHA MARIA SANCHEZ QUIROZ, an individual residing in Mexico, DON CLEMENTE, INC., a Texas Corporation, and PASATIEMPOS GALLO, S.A de C.V., a Mexican Corporation (Plaintiffs), v. ALEJANDRO ARANDA CERVANTES, a United States individual; OSCAR ARANDA CERVANTES, a United States

individual; and GENERAL MERCHANDISE DISTRIBUTION, a California entity; and John Doe 1-10 (collectively, "Defendants"). Complaint for Trademark Infringement, Unfair Competition, Trademark Dilution, and Related Claims – Injunctive Relief and Damages. Plaintiffs, Martha Maria Sanchez Quiroz, Don Clemente Inc., and Pasatiempos Gallo S.A.de C.V (collectively "Plaintiffs") state the following for its Complaint against Alejandro Aranda Cervantes; Oscar Aranda Cervantes; General Merchandise Distribution and John Doe 1-10.

## INTRODUCTION

1. This is an action at law and in equity for trademark infringement, unfair competition, dilution, and injury to business reputation, arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051 et seq. ("Lanham Act"); the Anti-Dilution laws of California Business and Professional Code; Tortious Interference and the common law.

2. Plaintiffs-then-agents, Alejandro Aranda Cervantes and Oscar Aranda Cervantes (collectively, "the Aranda Cervantes brothers"), were selling Plaintiffs' products in the United States of America, particularly in the state of California, to many of Plaintiffs' clients including among them, Northgate Gonzalez Markets, Inc., operating under dba North Gonzalez Markets (hereinafter, Northgate).

3. Northgate had started buying Plaintiffs' products as early as 2000, before the Aranda Cervantes brothers began representing Plaintiffs. When the Aranda Cervantes brothers stopped their activities as agents and distributors of Plaintiffs, Northgate stopped its business relationship with Plaintiffs.

4. For many years, Plaintiffs continue to reach out to Northgate regarding the sales of the LOTERIA® products. Unknown to Plaintiffs and upon information and belief, Northgate continued to buy similar products from the Aranda Cervantes brothers, under General Merchandise Distribution (hereinafter, GMD), which infringe upon Plaintiffs' intellectual property rights (as shown below).

5. Upon information and belief, Northgate is offering for sale and selling bingo cards and board games under the names of LOTERIA GIGANTE and LOTERIA

JUMBO, using identical reproduction of the Plaintiffs' federally registered trademarks and trade dresses identified in **Exhibit A** (hereinafter referred to as the "LOTERIA® Marks"). Plaintiffs do not manufacture Defendants' board games and bingo cards, nor are Defendants connected, licensed or affiliated with, or authorized by Plaintiffs in any way.

6. It was not until sometime in 2019 when Plaintiffs were visiting in California, that Plaintiffs discovered Northgate was still buying products from the Aranda Cervantes brothers. On October 9, 2019 Plaintiffs sent a cease-and-desist letter to Northgate regarding the infringing activities including a photograph of the purchase receipt. At the same time, Plaintiffs sent a cease-and-desist to the Aranda Cervantes brothers.

7. As declared in the letter by Bruce R. Brandlin, Vice President/Corporate Counsel of Northgate, dated October 21, 2019, in response to the October 9, 2019 cease and desist letter (attached as **Exhibit B**), Northgate purchased the LOTERIA JUMBO from GENERAL MERCHANDISE DISTRIBUTION, located at 819 N. Oakdale Avenue, Rialto, CA 92376.

8. Defendants' merchandise causes confusion and deceives consumers and the public regarding its source, and Defendants' merchandise dilutes and tarnishes the distinctive quality of the LOTERIA® Marks. All the claims asserted therein arise out of the Defendants' actions that caused a Trademark infringement.

9. Defendants Aranda Cervantes brothers worked as agents and distributors for Plaintiffs in the state of California in the United States of America beginning in 2001 until at least 2010. Attached as **Exhibit C** are proof of payments made from Plaintiffs to the Aranda Cervantes brothers. Subsequently, the Aranda Cervantes brothers stopped their business relationship with Plaintiffs and started their own activity in the United States directly competing with Plaintiffs' business.

10. Upon information and belief, the Aranda Cervantes brothers, through GMD, diverted Northgate from continuing to buy products from Plaintiffs. The Aranda

Cervantes brothers induced Northgate into buying the infringing products, sold as LOTERIA JUMBO, from GMD instead.

## ORIGINAL AND SUPPLEMENTAL JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction under section 39 of the Lanham Act, 15 U.S.C. §1121, and under 28 U.S.C. §§1331 and 1338. This Court has jurisdiction over Plaintiffs related state and common law claims pursuant to 28 U.S.C. §§1338 and 1367.

12. This Court has personal jurisdiction over Defendants Alejandro Aranda Cervantes and Oscar Aranda Cervantes because they both reside in the State of California.

13. Furthermore, Defendants have distributed, offered for sale and/or sold infringing merchandise within the State of California sufficient to permit the exercise of personal jurisdiction.

14. This Court has personal jurisdiction over Defendant GMD, because General Merchandise Distribution's principal place of business is located in the State of California and offered for sale and/or sold infringing merchandise within the State of California sufficient to permit the exercise of personal jurisdiction.

15. This Court has supplemental jurisdiction over the state claim pursuant to 28 U.S.C. § 1367(a).

16. Venue is proper in this District pursuant to 28 U.S.C.A. §§ 1391(b) and (c).

## THE PARTIES

17. Plaintiff MARTHA MARIA SANCHEZ QUIROZ is an individual citizen of Mexico with her residence and principal place of business at Queretaro, Mexico.

18. Plaintiff DON CLEMENTE, INC. is a U.S. Corporation, with its principal place of business located in San Antonio, Texas.

19. PASATIEMPOS GALLO, S.A. DE C.V. is a Corporation located in Queretaro, México.

20. Plaintiffs are informed and believe, and thereon allege, that Defendants Aranda Cervantes are both U.S. citizens residing at 819 N. Oakdale Avenue, Rialto, CA 92376 in the State of California.

21. Plaintiffs are informed and believe, and thereon allege, that Defendant GMD is a business entity operating under the laws of the State of California with its principal place of business at 819 N. Oakdale Avenue, Rialto, CA 92376.

## FACTS COMMON TO ALL THE CLAIMS FOR RELIEF

22. LOTERIA® is a traditional game of chance that uses a deck of cards with images. Each card has a specific image, number and name. This game became popular in the Mexican culture and then expanded in the rest of the world where is well known and played between the Mexican communities and has a decent success in the other communities as well.

23. The origin of the game can be traced back in history, but it was Don Clemente, Inc., here one of the Plaintiffs, that began publishing the game in 1887, creating iconic images that become famous and unique in Mexico first and then in the United States of America and Europe. Plaintiffs are the original creators, manufacturers of the famous Mexican bingo card games, engaged in, among other things, the creation and licensing of the exceedingly popular LOTERIA® bingo cards and board game. Plaintiffs' business encompasses the production, sale, and licensing of their famous LOTERIA® brand board games and bingo cards, as well as footwear, clothing, apparel, kitchenware, alcoholic beverages and other products, all of which prominently display and/or are offered in connection with one or more of Plaintiffs' famous and internationally recognized, federally-registered trademarks and trade dresses. Plaintiffs Martha Maria Sanchez Quiroz, Don Clemente, Inc. and Pasatiempos Gallo, SA de CV are the rightful owners of the intellectual property rights in all the trademark registration certificates attached as **Exhibit A**. Throughout the years the consumers started to identify the game itself with the Plaintiff's images and products.

24. Among the bingo cards identified by Plaintiffs' various registered trademarks and trade dresses are the following: (1) US Registration No. 2,956,552; (2) US Registration No. 2,956,553; (3) US Registration No. 2,956,058; (4) US Registration No. 2,956,554; (5) US Registration No. 2,980,466; (6) US Registration No. 2,980,465; (7) US Registration No. 2,980,464; (8) US Registration No. 2,873,958; (9) US Registration No. 2,873,957; (10) US Registration No. 2,873,956; (11) US Registration No. 2,980,462; (12) US Registration No. 2,969,261; (13) US Registration No. 2,873,955; (14) US Registration No. 2,980,461; (15) US Registration No. 2,969,255; (16) US Registration No. 3,016,707; (17) US Registration No. 3,016,706; (18) US Registration No. 2,901,308; (19) US Registration No. 2,836,243; (20) US Registration No. 2,839,906; (21) US Registration No. 2,839,905; (22) US Registration No. 2,839,904; (23) US Registration No. 2,862,284; (24) US Registration No. 2,839,899; (25) US Registration No. 2,839,898; (26) US Registration No. 2,876,667; (27) US Registration No. 3,043,255; (28) US Registration No. 2,868,880; (29) US Registration No. 2,871,196; (30) US Registration No. 2,871,195; (31) US Registration No. 2,868,965; (32) US Registration No. 2,868,964; (33) US Registration No. 2,868,963; (34) US Registration No. 2,868,962; (35) US Registration No. 2,871,233; (36) US Registration No. 2,904,380; (37) US Registration No. 2,871,200; (38) US Registration No. 2,871,199; (39) US Registration No. 3,147,917; (40) US Registration No. 2,871,194; (41) US Registration No. 2,975,222; (42) US Registration No. 2,975,221; (43) US Registration No. 2,866,357; (44) US Registration No. 2,876,658; (45) US Registration No. 2,866,355; (46) US Registration No. 2,890,939; (47) US Registration No. 2,890,938; (48) US Registration No. 3,144,540; (49) US Registration No. 2,653,355; (50) US Registration No. 2,655,609; (51) US Registration No. 2,653,354; (52) US Registration No. 2,673,824; (53) US Registration No. 2,317,479; (54) US Registration No. 2,193,067; (55) US Registration No. 2,193,066; (56) US Registration No. 1,364,671; (57) US Registration No. 3,208,050; (58) US Registration No. 3,187,390; (59) US Registration No. 3,006,186; (60) US Registration No. 3,029,671; (61) US Registration

No. 5,210,231; (62) US Registration No. 5,210,232; (63) US Registration No. 5,257,049; (64) US Registration No. 5,448,964; (65) US Registration No. 5,214,784; (66) US Registration No. 5,330,589; (67) US Registration No. 5,365,705; (68) US Registration No. 5,003,661; (69) US Registration No. 3,139,432; (70) US Registration No. 4,752,814; (71) US Registration No. 5,581,159; (72) US Registration No. 5,581,248; (73) US Registration No. 5,258,668; (74) US Registration No. 5,498,231; (75) US Registration No. 5,258,638; (76) US Registration No. 5,258,640; (77) US Registration No. 5,503,519; (78) US Registration No. 5,503,518; (79) US Registration No. 5,258,667; (80) US Registration No. 5,307,293; (81) US Registration No. 5,297,177; (82) US Registration No. 5,448,963; (83) US Registration No. 5,623,144; (84) US Registration No. 5,633,321; (85) US Registration No. 5,623,145; (86) US Registration No. 5,623,146; (87) US Registration No. 5,633,322; (88) US Registration No. 5,623,147; (89) US Registration No. 5,623,148; (90) US Registration No. 5,623,149; (91) US Registration No. 5,728,174; (92) US Registration No. 5,710,109; (93) US Registration No. 5,816,800; (94) US Registration No. 5,816,801; (95) US Registration No. 5,789,911; (96) US Registration No. 6,040,060; (97) US Registration No. 1,455,254; (98) US Registration No. 1,799,295; (99) US Registration No. 1,797,760; (100) US Registration No. 1,799,294; (101) US Registration No. 1,799,293; (102) US Registration No. 1,498,581.

25. Plaintiffs' LOTERIA® products and services have achieved great success. Since their inception in 1887, Plaintiffs' unique images in the bingo cards, and board games have grown to be the world's largest and most successful Mexican bingo card game with millions of games sold worldwide. Thus, the consuming public has come to identify Plaintiffs as the source of the bingo card game and apparel products sold under the LOTERIA® Marks.

26. Plaintiffs were selling the LOTERIA® to Northgate since early 2000, before they hired the Aranda Cervantes brothers as their agents to deal with clients.

27. Plaintiffs authorized and collaborated with the Aranda Cervantes brothers for the distribution of the LOTERIA® products in the United States of America between 2001 and 2010. In 2010, the Aranda Cervantes brothers and Plaintiffs stopped their business relationship and the Aranda Cervantes brothers were not authorized to act as agents of Plaintiffs any longer.

28. Even before and all throughout the period in which the Aranda Cervantes brothers acted as a Plaintiffs' agents, Plaintiffs continuously sold its products to Northgate. In 2010, Northgate stopped purchasing Plaintiffs' products when Plaintiffs' collaboration with the Aranda Cervantes brothers ended that same year.

29. For many years, Plaintiffs continued to reach out to Northgate regarding the sales of its LOTERIA® products. It was not until sometime in 2019 when Plaintiffs were visiting in California that Plaintiffs finally discovered the reason why Northgate stopped buying from them. Northgate was still buying bingo card game products from the Aranda Cervantes brothers. Such products were not produced, manufactured or sold by Plaintiffs and were infringing upon Plaintiffs' registered trademarks.

30. On or about sometime in 2019, Plaintiffs found and purchased a copy of the infringing product from Northgate itself. It was in that occasion that Plaintiffs learned about the current infringing activity and started investigating it further.

**DEFENDANTS' UNLAWFUL ACTIVITIES**

31. Upon information and belief Plaintiffs contends Defendants are marketing, offering for sale, selling and distributing bingo cards and board games identified as "LOTERIA GIGANTE AND LOTERIA JUMBO" (the "Offending Bingo Card Game") as displayed in **Exhibit D**, using identical reproductions of the LOTERIA® Marks.

32. Upon information and belief, Defendants were familiar with the LOTERIA® Marks when it commenced offering for sale, selling and/or distributing the Offending Bingo Card Game.

33. On information and belief, Defendants intentionally identified the Offending Bingo Card Game to mislead and deceive consumers into believing that such products were manufactured, authorized, sponsored, approved, or licensed by Plaintiffs.

34. The Offending Bingo Card Game distributed, offered for sale, and/or sold by Defendants is not manufactured by Plaintiffs, nor are Defendants licensed, authorized, sponsored, endorsed, or approved by Plaintiffs to manufacture, distribute, offer for sale and/or sell Board games and Bingo cards using any of the LOTERIA® Marks.

35. The LOTERIA® Marks have been used extensively and continuously by the Plaintiffs, and had become famous, long before Defendants began their unauthorized use of the LOTERIA® Marks in connection with efforts to promote and sell the Offending Bingo Card Game.

36. The Offending Bingo Card Game sold by Defendants competes with goods sold by Plaintiffs and is sold through overlapping channels of trade.

37. Defendants' use of reproductions of the LOTERIA® Marks is likely to deceive, confuse, and mislead purchasers and prospective purchasers into believing that the Offending Bingo Card Game sold by the Defendants is manufactured by, authorized by, sponsored by, approved by, licensed by, or in some manner associated with Plaintiffs, which it is not. In fact, Plaintiffs have discovered evidence of actual confusion between the bingo cards owned by Plaintiffs and those owned by Defendants. The likelihood of confusion, mistake and deception engendered by Defendants' misappropriation of the LOTERIA® Marks is causing irreparable harm to the goodwill symbolized by the LOTERIA® Marks and the reputation for quality that they embody.

38. Defendants' activities are likely to cause confusion because, inter alia, prospective purchasers, and others viewing the Offending Bingo Card Game at the point of sale are likely – due to Defendant's use of the LOTERIA® Marks – to mistakenly attribute the product to Plaintiffs. This is particularly damaging with respect to those people who perceive a defect or lack of quality in Defendants' products. By causing such a likelihood of confusion, mistake, and deception, Defendants are inflicting

irreparable harm to the goodwill symbolized by the LOTERIA® Marks and the reputation for quality that they embody.

39. On Information and belief, Defendants knowingly, willfully, intentionally, and maliciously adopted and used confusingly similar reproductions of the LOTERIA® Marks.

40. Defendants were aware of the registered trademarks of Plaintiffs because they acted as their agents for almost ten years.

41. Defendants purposefully induced Northgate to stop purchasing the Plaintiffs' product and/or induced Northgate into believing the products it was buying were Plaintiffs' products.

42. Defendants purposefully created GMD to distribute the Offending Bingo Card Game as a substitute and infringing product of Plaintiffs' LOTERIA®.

43. As a result of the Aranda Cervantes brothers' actions, Plaintiffs' saw a decrease in sales of its products of at least $15,000.00 dollars annually, due to the fact Northgate ceased any business relationship with them.

## FIRST CLAIM FOR RELIEF
### (Federal Trademark Infringement)

44. Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1 through 43.

45. Plaintiffs are entitled to protection because they properly registered the marks with the USPTO as showed in the certificates of registration under **Exhibit A**.

46. Defendants' use of confusingly similar imitations of the LOTERIA® Marks causes confusion, deception, and mistake by creating the false and misleading impression that Defendants' products are manufactured or distributed by Plaintiffs, or associated or connected with Plaintiffs, or have the sponsorship, endorsement, or approval of Plaintiffs. As shown in **Exhibit D and Exhibit E**, Defendants produced, and/or purchased, board cards representing multiple identical images protected by the Plaintiffs registered Trademarks.

47. As shown in the photographs of the Offending Bingo Card Game attached as **Exhibit D**, Defendants used at least one mark confusingly similar to one or more of Plaintiffs' federally registered marks in violation of 15 U.S.C. §1114, and Defendants' activities have caused and will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Plaintiffs' goodwill and reputation as symbolized by the federally registered LOTERIA® Marks, for which Plaintiffs have not an adequate remedy at law.

48. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiffs federally registered LOTERIA® Marks to Plaintiffs great and irreparable injury. Defendants distributed in the stream of commerce a version of the card game with almost all the images identical to the ones protected by Trademark registration.

49. Upon information and belief, by their acts, Defendants have made and will make substantial profits and gains to which they are not in law or in equity entitled.

50. Consumers are misled about the origin of the two products and they often confuse the Defendants' product with the LOTERIA® Marks. The Bingo Card Game targets the general population in the vast majority. This target is unlikely to control the origin of the product since the purpose is to have fun, hence the Defendants' conduct can be highly dangerous in creating actual misconception as in fact it did. There's no doubt that a consumer quickly looking at the images would associate them with the LOTERIA® Marks, because the infringing products use images almost identical to the original marks.

51. Defendants was well aware of the LOTERIA® marks because each and all of them had a past relationship with Plaintiffs which involved the purchase and resale of the Plaintiffs' LOTERIA®.

52. Defendants has caused and is likely to continue to cause substantial injury to the public and to Plaintiffs, and Plaintiffs are entitled to injunctive relief and to recover

Defendant's profits, actual damages, enhanced profits and damages, costs and reasonable attorneys' fees under 15 U.S.C. §§1114, 1116 and 1117.

## SECOND CLAIM FOR RELIEF
### (Federal Unfair Competition)

53. Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1 through 43.

54. Defendants' use of confusingly similar imitations of the LOTERIA® Marks has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' goods are manufactured or distributed by Plaintiffs, or are affiliated, connected, or associated with Plaintiffs or have the sponsorship, endorsement, or approval of Plaintiffs.

55. Defendants have made false representations, false descriptions, and false designations of origin of their goods in violation of 15 U.S.C. §1125(a), and Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Plaintiffs' goodwill and reputation as symbolized by the LOTERIA® Marks, for which Plaintiffs have no adequate remedy at law.

56. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the LOTERIA® Marks to the great and irreparable injury of Plaintiffs.

57. Defendants has been aware of the confusion created in the customers because each and all Defendants were familiar with Plaintiffs' LOTERIA® due to their previous business relationship with Plaintiffs involving the sale and distribution of Plaintiffs' LOTERIA®. Defendants have done nothing to avoid that the customers fell into this confusion.

58. Upon information and belief, by their acts, Defendants have made and will make substantial profits and gains to which they are not in law or in equity entitled.

59. Defendants' conduct has caused, and is likely to continue causing, substantial injury to the public and to Plaintiffs. Plaintiffs are entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and damages, costs and reasonable attorneys' fees pursuant to 15 U.S.C. §1125,1116 and 1117.

## THIRD CLAIM FOR RELIEF
## (Federal Trademark Dilution)

60. Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1 through 43.

61. Plaintiffs have extensively and continuously promoted and used the registered LOTERIA® Marks in Mexico, the United States of America and throughout the world. The LOTERIA® Marks thereby had become a famous and well-known symbol of Plaintiffs' goods well before Defendants offered for sale the board game and bingo card game complained of in this Complaint.

62. Defendants is making commercial use of at least one mark that dilutes and is likely to dilute the distinctiveness of the LOTERIA® Marks by eroding the public's exclusive identification of this famous mark with Plaintiffs, tarnishing and degrading the positive associations and prestigious connotations of the mark, and otherwise lessening the capacity of the mark to identify and distinguish goods and services.

63. The degree of similarity between the LOTERIA® Marks and the infringing products is remarkable. In some images the infringing products show the exact same image displayed in the LOTERIA® Marks. See comparison chart in **Exhibit E**.

64. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the LOTERIA® Marks or to cause dilution of the LOTERIA® Marks, to the great and irreparable injury of Plaintiffs.

65. Upon information and belief, by their acts, Defendants have made and will make substantial profits and gains to which they are not in law or in equity entitled.

66. Defendants have caused and will continue to cause irreparable injury to Plaintiffs' goodwill and business reputation, and dilution of the distinctiveness and value of Plaintiffs' famous and distinctive LOTERIA® Marks in violation of 15 U.S.C. §1125(c). Plaintiffs therefore are entitled to injunctive relief and to Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§1125(c), 1116 and 1117.

## FOURTH CLAIM FOR RELIEF

### (State Trademark Dilution and Injury to Business Reputation)

67. Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1 through 43.

68. Plaintiffs have extensively and continuously promoted and used the federally registered LOTERIA® Marks both in the United States and throughout the world, and the LOTERIA® Marks have become a distinctive, famous, well-known symbol of Plaintiffs' goods and services.

69. Defendants' unauthorized use of the federally registered LOTERIA® Marks dilutes and is likely to dilute the distinctiveness of Plaintiffs' LOTERIA® Marks by eroding to the public's exclusive identification of these famous and well-known marks with Plaintiffs, and tarnishing and degrading the positive associations and prestigious connotations of the LOTERIA® Marks.

70. Defendants are causing and will continue to cause irreparable injury to Plaintiffs' goodwill and business reputation, and dilution of the distinctiveness and value of Plaintiffs' famous and distinctive LOTERIA® Marks in violation of the California law. Plaintiffs therefore are entitled to injunctive relief, damages and costs, as well as, if appropriate, enhanced damages and reasonable attorneys' fees.

## FIFTH CLAIM FOR RELIEF

### (Common Law Trademark Infringement and Unfair Competition)

71. Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1 through 43.

72. On information and belief, Defendants acted with full knowledge of Plaintiffs' use of, and statutory and common law rights to, the LOTERIA® Marks and without regard to the likelihood of confusion of the public created by Defendants' activities.

73. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the LOTERIA® Marks to the great and irreparable injury of Plaintiffs.

74. Upon information and belief, by their acts, Defendants made and will make substantial profits and gains to which they are not in law or in equity entitled.

75. As a result of Defendants' acts, Plaintiffs have been damaged in an amount not as yet determined or ascertainable. At a minimum, Plaintiffs are entitled to injunctive relief, to an accounting of Defendant's profits, to damages, and to costs. Considering the deliberately fraudulent and malicious use of confusingly similar imitations of the LOTERIA® Marks, and the need to deter Defendants from similar conduct, Plaintiffs additionally are entitled to punitive damages.

## SIXTH CLAIM FOR RELIEF

### (Tortious Interference)

76. Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1 through 43.

77. Beginning on 2000, Northgate had a contractual relationship with Plaintiffs involving the purchase and distribution of Plaintiffs' LOTERIA® in the United States.

78. Defendants Aranda Cervantes brothers and GMD were aware of the business relationship between Plaintiffs and Northgate because the Aranda Cervantes brothers acted as agents for Plaintiffs during the period between 2001 and 2010. In fact, Plaintiffs assigned the Northgate account to the Aranda Cervantes brothers.

79. The Aranda Cervantes brothers and GMD prevented the business relationship between Plaintiffs and Northgate to continue because they induced Northgate to buy from the Aranda Cervantes brothers and GMD making Northgate to believe it was still buying Plaintiffs' products.

80. The Aranda Cervantes brothers and GMD knew that preventing Northgate from buying Plaintiffs' products would result in an end of the previous business relationship between Northgate and Plaintiffs.

81. As a result of the Aranda Cervantes brothers and GMD's actions, Plaintiffs' sales dropped, and Plaintiffs suffered serious financial harm.

82. Without the Aranda Cervantes brothers and GMD's actions, it was likely that Northgate would have continued to buy Plaintiffs' products. Thus, the Aranda Cervantes brothers and GMD's actions were the substantial cause that caused Plaintiffs' harm.

## PRAYER FOR JUDGMENT AND RELIEF

WHEREFORE, the Plaintiffs pray that:

1. Defendants and all their agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendants, or in concert or participation with Defendants be enjoined preliminarily and permanently, from: (a). Using any trademark, service mark, name, logo, design or source designation if any kind on or in connection with Defendants' goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to, or in any way similar to the trademarks or trade dresses of Plaintiffs; (b). Using a trademark, trade dress, service mark, name, logo, design or source designation of any kind on or in connection with Defendants' goods or services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Plaintiffs, or are sponsored or authorized by Plaintiffs or are in any way connected or related to Plaintiffs; (c). Using

any trademark, trade dress, service mark, name, logo, design or source designation of any kind on or in connection with Defendants' goods or services that dilutes or is likely to dilute the distinctiveness of the trademarks, trade dress, service marks, names, or logos of Plaintiffs; and (d). passing off, laming off, or assisting in passing off or palming off Defendants' goods or services as those of Plaintiffs, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint;

2. Defendants be ordered to recall all products bearing the LOTERIA® Marks or any other confusingly similar variation thereof, which have been shipped by Defendants or under their authority, to any customer, including, but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each customer a copy of this Court's order as it relates to said injunctive relief against Defendants;

3. Defendants be ordered to deliver up for impoundment and for destruction all board games, cards, bingo cards, bags, boxes, labels, tags, signs, packages, receptables, advertising, sample books, promotional material, stationery or other materials in the possession, custody, or under control of Defendants that are found to adopt, to infringe, or to dilute any of the LOTERIA® Marks or that otherwise unfairly compete with Plaintiffs and their products and services;

4. Defendants be compelled to account to Plaintiffs for any and all profits derived by Defendants from the sale or distribution of infringing goods as described in this Complaint;

5. Plaintiffs be awarded all damages caused by the acts forming the basis of this Complaint;

6. Based on Defendants' knowing and intentional use of confusingly similar imitations of the LOTERIA® Marks, the damages award be trebled, and the award of Defendant's profits be enhanced as provided for by 15 U.S.C. §1117(a);

7. Defendants be required to pay to Plaintiffs the costs of this action and its reasonable attorneys' fees pursuant to 15 U.S.C. §1117(a) and the state statutes cited in this Complaint;

8. Based on Defendants' willful and deliberate infringement and dilution of the LOTERIA® Marks, and to deter such conduct in the future, Plaintiffs be awarded punitive damages;

9. Plaintiffs be awarded all the damages caused by the Aranda Cervantes brothers and GMD's intentional interference with Plaintiffs' former contractual relationship with Northgate;

10. Specifically, Plaintiffs be awarded $110,347.00 as lost income (calculated accordingly to the chart in **Exhibit C**), plus the disgorgement on Defendants' profits arising out of the infringing activities to be determined on the number of sales made by Defendants;

11. Plaintiffs be awarded the amount of a reasonable royalty that they would have earned if Defendants were lawfully licensed;

12. Plaintiffs be awarded corrective advertising to compensate and assist in the reversal of any negative associations resulting from the Defendants' infringing actions;

13. Plaintiffs be awarded augmented punitive damages pursuant to the Lanham Act;

14. Statutory damages in the amount of not less than $1,000.00 per mark;

15. Plaintiffs be awarded the attorney's and legal fees; and

16. Plaintiffs have such other and further relief as the Court may deem just.

Date: February 16, 2021                          **NOLI IP SOLUTIONS P.C.**

By: */S/Mariana Paula Noli*
Mariana Paula Noli, Esq.
CA State Bar 247369
Attorney for Plaintiffs