Mariana Paula Noli, CA State Bar No. 247369
mail@noli-ipsolutions.com

Gregory D. Butler, CA State Bar No. 331064
greg@noli-ipsolutions.com

NOLI IP SOLUTIONS, P.C.
5030 Bella Collina St.,
Oceanside, California 92056
Telephone: (442) 224-7490

Attorneys for Plaintiffs
MARTHA MARIA SANCHEZ QUIROZ
DON CLEMENTE, INC.
PASATIEMPOS GALLO, S.A. de C.V.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA MARIA SANCHEZ QUIROZ, a Mexican individual, DON CLEMENTE INC., a Texas Corporation, PASATIEMPOS GALLO S.A. de C.V., a Mexican Corporation<br><br>                Plaintiffs,<br><br>  v.<br><br>ALEJANDRO ARANDA CERVANTES, an individual, OSCAR ARANDA CERVANTES, an Individual, and GENERAL MERCHANDISE DISTRIBUTION, a California entity<br><br>                Defendants. | Case No. **5:21-cv-00268-JWH-SHK**<br><br>**NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: June 25, 2021<br>Time: 9:00am<br>Courtroom:2 |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on **June 25, 2021**, in Courtroom 2 of the above-entitled court, Plaintiffs Martha Maria Sanchez Quiroz, Don Clemente Inc., and Pasatiempos Gallo S.A. de C.V., will move this Court pursuant to Federal Rule of Civil Procedure 55(b) for entry of default judgment against Defendants Alejandro Aranda Cervantes, Oscar Aranda Cervantes, and General Merchandise Distribution. This Motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities and the Proposed Default Judgment, oral argument, all pleadings in this action, and any other matter that may be submitted in support of the Motion.

Date: May 28, 2021.                    Respectfully submitted

**NOLI IP SOLUTIONS P.C.**

By:  */S/Mariana Paula Noli*
Mariana Paula Noli, Esq.
CA State Bar 247369
Attorney for Plaintiffs

1

2
# TABLE OF CONTENTS

3
**Page**

4
I. SUMMARY OF ARGUMENTS………………………………………………………1

5
II. PROCEDURAL BACKGROUND……………………………………………...3

6
III. PLAINTIFFS ALLEGATIONS……………………………………………...3

7
IV. ARGUMENTS………………………………………………………………5

8
A. Governing Law for Default Judgments………………………………………5

9
B. The Eitel Factors Favor Entering Default Judgment…………………………6

10
1. Plaintiffs Will Suffer Prejudice if Default Judgment Is Not Entered……………6

11
2. Plaintiffs' Claims Are Meritorious and their Complaint Is Sufficient……………6

12
2A. Claim for trademark infringement……………………………………………7

13
2B. Claim for Federal Unfair competition………………………………………8

14
2C. Federal Trademark Dilution…………………………………………………9

15
2D. State Trademark Dilution and Injury to Business Reputation…………………9

16
2E. Common Law Trademark Infringement and Unfair Competition……………10

17
2F. Tortious Interference…………………………………………………………10

18
3. Plaintiffs' Requested Relief Is Tailored to Defendants' Misconduct……………11

19
4. There Is No Possibility of a Genuine Issue of Material Fact……………………12

20
5. The Default Entered Against Defendant Did Not Result from Excusable Neglect………12

21
6. The Policy Favoring Adjudication of Disputes on the Merits Does Not Weigh Against Default

22
Judgment…………………………………………………………………......13

23
V. PLAINTIFFS PRAYERS AND REQUESTED RELIEF………………………13

24
CONCLUSION………………………………………………………………15

25

26

27

28

MOTION FOR DEFAULT JUDGMENT

# TABLE OF AUTHORITIES

Page

### Federal Court Cases

Eitel v. McCool, 782 F.2d 1470 (9th Cir. 1986) ............................................2,5,6,7,11,12,13

Adriana Int'l Corp. v. Lewis & Co., 913 F.2d 1406 (9th Cir. 1990) ......................................6

Davis v. Fendler, 650 F.2d 1154 (9th Cir. 1981) ..................................................................6

PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172 (C.D. Ca. 2002) ..................6,11,13

TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915 (9th Cir. 1987) ...................................5,6

Philip Morris U.S.A. Inc. v. Castworld Prods., 219 F.R.D. 494 (C.D. Cal. 2003) .......................12,13

### Federal Statutory Authority

50 U.S.C. App.……………………………………………………………………………6

15 U.S.C. §1114(a)………………………………………………………………………7

15 U.S.C. §1117(a)………………………………………………………………………14

15 U.S.C. §1117(b)………………………………………………………………11,14

15 U.S.C. §1117(c)……………………………………………………………....11,14

15 U.S.C. §1125(a)………………………………………………………………………8

15 U.S.C. § 1125(c)(2)(B)………………………………………………………………9

### Federal Rule and Regulations

Fed. R. Civ. P. 55………………………………………………………………...1,6,13

MOTION FOR DEFAULT JUDGMENT

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. SUMMARY OF ARGUMENTS

Plaintiffs Martha Maria Sanchez Quiroz, Don Clemente Inc., and Pasatiempos Gallo S.A. de C.V., will move this Court pursuant to Federal Rule of Civil Procedure 55(b) for entry of default judgment against Defendants Alejandro Aranda Cervantes, Oscar Aranda Cervantes, and General Merchandise Distribution.

Plaintiffs seek to permanently enjoin Defendants from: (a) using any trademark, service mark, name, logo, design or source designation if any kind on or in connection with Defendants' goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to, or in any way similar to the trademarks or trade dresses of Plaintiffs; (b) using a trademark, trade dress, service mark, name, logo, design or source designation of any kind on or in connection with Defendants' goods or services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Plaintiffs, or are sponsored or authorized by Plaintiffs or are in any way connected or related to Plaintiffs; (c) using any trademark, trade dress, service mark, name, logo, design or source designation of any kind on or in connection with Defendants' goods or services that dilutes or is likely to dilute the distinctiveness of the trademarks, trade dress, service marks, names, or logos of Plaintiffs; and (d) passing off, laming off, or assisting in passing off or palming off Defendants' goods or services as those of Plaintiffs, or otherwise continuing any and all acts of unfair competition as alleged in the Complaint.

Plaintiffs seek the recall by Defendants of all products bearing the LOTERIA® Marks or any other confusingly similar variation thereof, which have been shipped by Defendants or under their authority, to any customer, as well as the destruction of the infringing board games that are still in the possession, custody, or under control of Defendants that are found to adopt, to infringe, or to dilute any of the LOTERIA® Marks or that otherwise unfairly compete with Plaintiffs and their products and services, as specified more in detail in the request and prayer for relief. Additionally, Plaintiffs seek monetary damages as specified in the prayer for relief and monetary damages below.

This relief is necessary because otherwise Defendants will continue to sell the bingo card game that directly infringes Plaintiffs trademarks and generate consumers' confusion. After stopping

working for Plaintiffs, the Defendants purposefully induced one of its customers, Northgate Gonzalez Market, to stop purchasing the Plaintiffs' LOTERIA® board games and playing cards and induced Northgate into believing the products it was buying from them were Plaintiffs' products. Indeed, the infringing products were sold under a very confusingly similar mark "LOTERIA JUMBO" and each individual playing card was a reproduction of Plaintiffs LOTERIA® cards game protected under trade dress. The trademark LOTERIA® as well as the images of each individual card are Plaintiffs registered trademarks on the Principal Register with the United States Patent and Trademark Office, therefore, the unauthorized sale, reproduction, marketing, or promotion of a product bearing confusingly similar brand/s and image/s is trademark infringement under 15 U.S.C. § 1051 et seq.  Defendants' use of reproductions of the LOTERIA® Marks is likely to deceive, confuse, and mislead purchasers and prospective purchasers into believing that the Offending Bingo Card Game sold by the Defendants is manufactured by, authorized by, sponsored by, approved by, licensed by, or in some manner associated with Plaintiffs, which it is not. Unless this Court enjoins the Aranda Cervantes brothers from selling the unauthorized bingo games to Northgate Gonzalez Market and others, Plaintiffs will not have any other recourse to stop the unauthorized sale of the offending bingo game, while Defendants will continue to capitalize on Plaintiffs' goodwill and registered marks without paying any license royalties to Plaintiffs.  Additionally, the sale of the offending LOTERIA's product through a big chain of stores, like the Northgate Gonzalez Market, will have the effect to dilute the distinctiveness of the LOTERIA's marks and Plaintiffs will continue to suffer irreparable damages.

Furthermore, as a result of the Aranda Cervantes brothers' actions, Plaintiffs saw a decrease in sales of its products of at least $15,000.00 dollars annually, due to the fact Northgate ceased all business relationship with them. Plaintiffs will continue to lose money since the Northgate Gonzalez Market and its customers will continue to buy the infringing products.  The Aranda Cervantes brothers will continue to capitalize on Plaintiffs' goodwill on their registered marks, unless this Court issues the injunction and orders the destruction or recall of all the infringing products as requested on the prayer for relief.

The factors set forth in *Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986)*, weigh in favor of this Court entering default judgment because: (1) if not entered, Plaintiffs will suffer

MOTION FOR DEFAULT JUDGMENT

prejudice, (2) Plaintiffs states several claims on which they may recover, (3) the Complaint is sufficiently pled, (4) Plaintiffs seeks injunctive relief and monetary damages; (5) there is little possibility of a dispute of material facts, (6) the default is not due to Defendants' excusable neglect, and (7) Defendants have not appeared to allow a decision on the merits.

## II. PROCEDURAL BACKGROUND

Plaintiffs Martha Maria Sanchez Quiroz, Don Clemente Inc., and Pasatiempos Gallo S.A. de C.V., filed a complaint on February 16th, 2021 (Dkt #1).  Defendants Alejandro Aranda Cervantes (Dkt #10), Oscar Aranda Cervantes (Dkt #14), and General Merchandise Distribution (Dkt #12) were timely served on March 30th, 2021 (Dkt #10, 12, 14). On April 28th, 2021, Plaintiffs filed a Motion for Clerk's Entry of Default as to the Defendants Alejandro Aranda Cervantes, Oscar Aranda Cervantes, and General Merchandise Distribution (Dkt #15).  On April 30th, 2021, the Clerk entered the Default (Dkt #17). On May 6th, 2021, the Defendants untimely answered the complaint, six days after the Default was already entered by the Clerk (Dkt # 19). On May 12th, 2021, the Judge directed the Clerk to strike Defendants' Answer (Dkt # 20, 21).

## III. PLAINTIFFS ALLEGATIONS

Plaintiffs' business encompasses the production, sale, and licensing of their famous bingo cards game under the registered brand LOTERIA®, which is a well-known famous game of chance that uses a deck of cards with popular images. The mark LOTERIA® as well as the images of each individual playing card of the bingo game are federally registered on the Principal Register, and, therefore, protected as a trademark and/or trade dress (**Exhibit A**, Dkt #1). Plaintiffs' LOTERIA® branded products and services have achieved great success especially among the Latino communities in the United States of America.  Since their inception in 1887, Plaintiffs' unique images in the bingo cards, and board games have grown to be the world's largest and most successful Mexican bingo card game with millions of games sold worldwide.  The consuming public has come to identify Plaintiffs as the source of the bingo card game and apparel products sold under the LOTERIA® Marks.

Plaintiffs sold its card games to several prominent chains of businesses and stores including the Northgate Gonzalez Market located in California. Defendants Aranda Cervantes brothers worked as agents and distributors for Plaintiffs in the state of California in the United States of America beginning

in 2001 and until 2010. During these years Plaintiffs were selling the LOTERIA® card games to Northgate Gonzalez Market.  Plaintiffs had assigned to the Aranda Cervantes brothers the account of Northgate Gonzalez Market. The Aranda Cervantes brothers stopped working for Plaintiffs in 2010. While unknown to Plaintiffs, Northgate stopped buying from Plaintiffs the LOTERIA® bingo card games immediately after that to start buying from the Aranda Cervantes brothers directly. For many years, Plaintiffs continued to reach out to Northgate regarding the sales of its LOTERIA® products. It was not until sometime in 2019 when Plaintiffs discovered the real reason why Northgate stopped buying from them while visiting in California. Northgate was still buying bingo card game products but now from the Aranda Cervantes brothers.  Such products, sold under the brand LOTERIA JUMBO, were not produced, manufactured or sold by Plaintiffs. These products were infringing upon Plaintiffs' registered trademarks, since not only the Aranda Cervantes brothers were selling the bingo card games under the confusingly similar mark LOTERIA JUMBO without any authorization or license from Plaintiffs but the images of each individual card are in fact an unauthorized reproduction of the Plaintiffs original LOTERIA® trademarks and trade dress.  The image of each individual card of the game is registered with the United States Patent and Trademark Office, therefore, it is protected against unauthorized use, sale or reproduction without Plaintiffs' authorization or license. Defendants were aware of the registered trademarks of Plaintiffs because they acted as their agents for almost ten years. Defendants' activities are likely to cause confusion among consumers because, inter alia, prospective purchasers, and others viewing the Offending Bingo Card Game at the point of sale are likely – due to Defendants' use of the LOTERIA® Marks – to mistakenly attribute the product to Plaintiffs.  This is also particularly damaging with respect to those people who perceive a defect or lack of quality in Defendants' products.  By causing such a likelihood of confusion, mistake, and deception, Defendants are inflicting irreparable harm to the goodwill symbolized by the LOTERIA® Marks and the reputation for quality that they embody.

Defendants knowingly, willfully, intentionally, and maliciously adopted and used confusingly similar reproductions of the LOTERIA® Marks. Defendants purposefully induced Northgate to stop purchasing the Plaintiffs' products and/or induced Northgate into believing the products it was buying were Plaintiffs' original products. As a result of the Aranda Cervantes brothers' actions, Plaintiffs'

MOTION FOR DEFAULT JUDGMENT

saw a decrease in sales of its LOTERIA® products of at least $15,000.00 dollars annually, due to the fact Northgate ceased all business relationship with them. In 2019, after discovering the infringing bingo game, Plaintiffs purchased a sample of the offending product from Northgate itself. On October 9th, 2019 Plaintiffs sent a cease-and-desist letter to Northgate Gonzalez Market. On October 21st, 2019, Bruce R. Brandlin, Vice President/Corporate Counsel of Northgate, sent a response letter confirming that Northgate purchases the LOTERIA JUMBO from GENERAL MERCHANDISE DISTRIBUTION (GMD) owned by the Aranda Cervantes brothers (**Exhibit B,** Dkt #1). On November 4th, 2019, Alejandro Aranda Cervantes, CEO of General Merchandise Distribution, sent a letter assuring Plaintiffs that they will refrain from any further infringing activity (**Exhibit B**, Dkt #1). Although he made this promise in writing, the Aranda Cervantes brothers and General Merchandise Distribution continued to sell the offending LOTERIA® bingo games to Northgate and ignored all subsequent cease and desist letters, offers for settlement and communications. Leaving Plaintiffs, no other choice other than filing this lawsuit, Plaintiffs initiated this action for federal trademark infringement, federal unfair competition, federal trademark dilution, state trademark dilution and injury to business reputation, common law trademark infringement and unfair competition, tortious interference with the formal contractual relationship with the Northgate Gonzalez Market. Defendants Aranda Cervantes brothers worked as agents and distributors for Plaintiffs in the state of California in the United States of America beginning in 2001 until at least 2010 and that during those years they were selling Plaintiffs' LOTERIA® products to Northgate (**<u>Exhibit C</u>**, Dkt #1).

### IV. ARGUMENTS

### A. Governing Law for Default Judgments

Default judgments are governed by Federal Rule of Civil Procedure 55. In this case, the controlling rule is Rule 55(b)(2) because Plaintiffs' claims are not for a sum certain. FRCP 55(b)(1). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987). The decision to grant or deny a default judgment under Rule 55(b) is within the discretion of the Court. *Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).* Although a formal hearing is not required for a court to render a default judgment, plaintiffs have the burden of proving

damages through testimony, written affidavit, or other relevant evidence. *Davis v. Fendler, 650 F.2d 1154 (9th Cir. 1981)*.  Here, Default Judgment against Defendants can only be entered by the Court upon application by Plaintiffs. Defendants have failed to plead or otherwise defend against Plaintiffs' claims. Defendants are not infants or incompetent persons, and the Service members Civil Relief Act, 50 U.S.C. App. §501, et seq., does not apply to Defendants. Accordingly, this Court may properly enter Default Judgment against Defendants based solely on Plaintiffs Motion.

**B. The Eitel Factors Favor Entering Default Judgment**

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel, 782 F.2d at 1471-72. As demonstrated below, the Eitel factors strongly favor entry of Default Judgment in this case.

1    **Plaintiffs Will Suffer Prejudice if Default Judgment Is Not Entered**

It is well-established that upon entry of default, the factual allegations of a complaint except those relating to the amount of damages are deemed true. TeleVideo, 826 F.2d at 917-18. Logically, entry of default also generally establishes defendants' liability. Adriana Int'l Corp. v. Lewis & Co., 913 F.2d 1406, 1414 (9th Cir. 1990). The truth of Plaintiffs' allegations having been established, default judgment is the only recourse available to Plaintiffs, and Plaintiffs will suffer prejudice if that relief is denied. Eitel, 782 F.2d at 1471; PepsiCo v., Inc., 238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002). Furthermore, the facts alleged in its Complaint are more than sufficient to establish Plaintiffs will suffer prejudice in the form of, among other things, a failure to enjoining Defendants from selling and distributing the infringing product that deceive consumers, and at the same time tarnishes and/or dilutes Plaintiffs' trademarks. On the record before the Court, there can be no doubt that the first Eitel factor supports entry of default judgment.

2.    **Plaintiffs' Claims Are Meritorious and their Complaint Is Sufficient**

MOTION FOR DEFAULT JUDGMENT

The second and third Eitel factors require a plaintiff to state a claim on which it may recover. Eitel, 782 F.2d at 1471. Plaintiffs seeks a permanent injunction that prevent the Defendants to continue to sell and promote the offending LOTERIA® bingo games that infringe Plaintiff's trademark rights, and also requests the recall and destruction of all the offending LOTERIA® bingo cards and board games that are under the control and authority of Defendants or that have been delivered by Defendants to consumers, including Northgate Gonzalez Market. They also seek monetary damages on the basis of multiple meritorious claims.

### 2A. Claim for trademark infringement

Plaintiffs have a valid claim for trademark infringement because the unauthorized use of Plaintiffs' trademarks is a direct violation of 15 U.S.C. §1114(a). Plaintiffs properly registered the marks LOTERIA® and each individual image of the playing cards of the LOTERIA® bingo game with the USPTO as shown in the certificates of registration in **(Exhibit A,** Dkt #1).

Defendants' use of confusingly similar imitations of the LOTERIA® Marks causes confusion, deception, and mistake by creating the false and misleading impression that Defendants' products are manufactured or distributed by Plaintiffs, or associated or connected with Plaintiffs, or have the sponsorship, endorsement, or approval of Plaintiffs. As shown in **Exhibit D** (Dkt #1) and **Exhibit E** (Dkt #1), Defendants produced, and/or purchased, bingo board game playing cards representing multiple identical images protected by the Plaintiffs under registered trademarks.

As shown in the photographs of the Offending Bingo Card Game attached as **Exhibit D** (Dkt #1), Defendants used at least one mark confusingly similar to one or more of Plaintiffs' federally registered marks in violation of 15 U.S.C. §1114, and Defendants' activities have caused and will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Plaintiffs' goodwill and reputation as symbolized by the federally registered LOTERIA® Marks, for which Plaintiffs have not an adequate remedy at law. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiffs federally registered LOTERIA® Marks to Plaintiffs great and irreparable injury. Defendants distributed in the stream of commerce a version of the bingo card game with images identical to the ones protected by Plaintiffs' trademark registrations.

Defendants have made and will continue to make substantial profits and gains to which they are not in law or in equity entitled. Consumers are misled about the origin of the two products and they often confuse the Defendants' product with Plaintiffs' product protected under the LOTERIA® Marks. The Bingo Card Game targets the general population in the vast majority. This target is unlikely to control the origin of the product since the purpose is to have fun, hence the Defendants' conduct can be highly dangerous in creating actual misconception as in fact it did. There's no doubt that a consumer quickly looking at the images would associate them with Plaintiffs' product protected under the LOTERIA® Marks, because the infringing products use images almost identical to the original.

Defendants were well aware of the LOTERIA® marks because each and all of them had a past relationship with Plaintiffs which involved the purchase and resale of the Plaintiffs' LOTERIA® products to many of Plaintiffs' customers. Notwithstanding having actual and constructive notice of Plaintiffs trademark rights, Defendants have been selling, promoting and marketing a product that reproduces Plaintiffs marks without any authorization from Plaintiffs.

### 2B. Claim for Federal Unfair competition

Plaintiffs has also a meritorious claim under federal unfair competition law since Defendants have made false representations, false descriptions, and false designations of origin of their goods in violation of 15 U.S.C. §1125(a), and these Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Plaintiffs' goodwill and reputation as symbolized by the LOTERIA® Marks, for which Plaintiffs have no adequate remedy at law. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the LOTERIA® Marks to the great and irreparable injury of Plaintiffs.  Defendants has been aware of the confusion created in the customers because each and all Defendants were familiar with Plaintiffs' LOTERIA® Marks due to their previous business relationship with Plaintiffs involving the sale and distribution of Plaintiffs' LOTERIA®. Defendants have done nothing to avoid customers from falling into this confusion as it benefits them.  Defendants have made and will make substantial profits and gains to which they are not in law or in equity entitled. Defendants' conduct has caused, and is likely to continue causing, substantial injury to the public and to Plaintiffs.

### 2C. Federal Trademark Dilution

Plaintiffs are entitled to protection under 15 U.S.C. § 1125(c)(2)(B). Plaintiffs have extensively and continuously promoted and used the registered LOTERIA® Marks in Mexico, the United States of America and throughout the world.  The LOTERIA® Marks thereby had become a famous and well-known symbol of Plaintiffs' goods well before Defendants offered for sale the board game and bingo card game subject of this Complaint.  Defendants are making commercial use of at least one mark that dilutes and is likely to dilute the distinctiveness of the LOTERIA® Marks by eroding the public's exclusive identification of these famous marks with Plaintiffs, tarnishing and degrading the positive associations and prestigious connotations of the marks, and otherwise lessening the capacity of the marks to identify and distinguish goods and services. The degree of similarity between the LOTERIA® Marks and the infringing products is remarkable.  In some images the infringing products show the exact same image displayed in the LOTERIA® Marks. See comparison chart in **Exhibit E** (Dkt #1).

Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the LOTERIA® Marks or to cause dilution of the LOTERIA® Marks, to the great and irreparable injury of Plaintiffs.  Plaintiffs show enough evidence and allege sufficient facts to support a meritorious cause of action for federal trademark dilution

### 2D. State Trademark Dilution and Injury to Business Reputation

Plaintiffs have meritorious claims under State Trademark Dilution and Injury to Business Reputation. Indeed, Plaintiffs have extensively and continuously promoted and used the federally registered LOTERIA® Marks both in the United States and throughout the world, and the LOTERIA® Marks have become distinctive, famous, well-known symbols of Plaintiffs' goods and services. Defendants' unauthorized use of the federally registered LOTERIA® Marks dilutes and is likely to dilute the distinctiveness of Plaintiffs' LOTERIA® Marks by eroding to the public's exclusive identification of these famous and well-known marks with Plaintiffs, and tarnishing and degrading the positive associations and prestigious connotations of the LOTERIA® Marks.

MOTION FOR DEFAULT JUDGMENT

Defendants are causing and will continue to cause irreparable injury to Plaintiffs' goodwill and business reputation, and dilution of the distinctiveness and value of Plaintiffs' famous and distinctive LOTERIA® Marks in violation of the California law.

## 2E. Common Law Trademark Infringement and Unfair Competition

Plaintiffs have also common law trademark rights. Plaintiffs allege that these rights were established even before that Defendants started to work for Plaintiffs and promote and sale Plaintiffs' product to Northgate Gonzalez Market. Defendants acted with full knowledge of Plaintiffs' use of, and statutory and common law rights to, the LOTERIA® Marks and without regard to the likelihood of confusion of the public created by Defendants' activities. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the LOTERIA® Marks to the great and irreparable injury of Plaintiffs. This is a violation of Common Law Trademark Infringement and Unfair Competition.

## 2F. Tortious Interference

Plaintiffs have also a meritorious claim for the tortious interference by the Aranda Cervantes brothers of the contractual relationship between Plaintiffs and Northgate Gonzalez Market. The requisite elements of tortious interference with contract claim are: (1) the existence of a valid and enforceable contract between plaintiff and another; (2) defendant's awareness of the contractual relationship; (3) defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other caused by defendant's wrongful conduct; and (5) damages. Plaintiffs proved that Northgate Gonzalez Market had a contractual relationship with Plaintiffs involving the purchase and distribution of Plaintiffs' LOTERIA® branded products in the United States. The Defendants Aranda Cervantes brothers and GMD were aware of the business relationship between Plaintiffs and Northgate because the Aranda Cervantes brothers acted as agents for Plaintiffs during the period between 2001 and 2010 selling Plaintiffs LOTERIA® bingo games to Northgate Gonzalez Market. Plaintiffs allege that the Aranda Cervantes brothers and GMD prevented the business relationship between Plaintiffs and Northgate to continue because they induced Northgate to buy from the Aranda Cervantes brothers and GMD making Northgate believe it was still buying Plaintiffs' products. Plaintiffs allege that the Aranda Cervantes brothers and GMD knew that preventing

Northgate from buying Plaintiffs' products would result in ending the previous business relationship between Northgate and Plaintiffs. Indeed, Northgate Gonzalez Market did breach the relationship with Plaintiffs because of Defendants' wrongful misconduct. As evidenced by the reply letter of Bruce R. Brandlin, Vice President/Corporate Counsel of Northgate, they were buying the LOTERIA JUMBO bingo card game from the Aranda Cervantes brothers and GMD (Exhibit B, Dkt #1). As a result of the Aranda Cervantes brothers and GMD's actions, Plaintiffs' sales dropped.  Plaintiffs suffered serious financial harm, since they loss Northgate Gonzalez Market which was buying an average of $15,000 per year worth of product (Exhibit C, Dkt #1). Plaintiffs allege that without the Aranda Cervantes brothers and GMD's actions, it was likely that Northgate would have continued to buy Plaintiffs' products.  Thus, the Aranda Cervantes brothers and GMD's actions were the substantial cause of Plaintiffs' harm.

Plaintiffs plead sufficient facts to support their claims and thus the second and third factors weigh in favor of granting default judgment.

### 3. **Plaintiffs' Requested Relief Is Tailored to Defendants' Misconduct**

The fourth Eitel factor requires the Court to consider the sum of money at stake in the action "in relation to the seriousness of Defendant's conduct." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1176 (C.D. Ca. 2002); Eitel, 782 F.2d at 1472. The request of damages for the amount of $110,347.00 as lost income (calculated accordingly to the chart in **Exhibit C** (Dkt #1) and Plaintiffs' declarations), plus the disgorgement on Defendants' profits arising out of the infringing activities to be determined on the number of sales made by Defendants, is proportionated to the misconduct of Defendants since the loss income is the direct result of the infringing actions by the Defendants in relation to Northgate Gonzalez Market.

Since the Defendants have been selling and promoting counterfeited products, it is appropriate for Plaintiffs to request the Court to determine and award the amount of trebled damages according to 15 U.S.C. §1117(b) as well as award statutory damages in the amount not less than $1,000 per each counterfeit mark as provided by 15 U.S.C. §1117(c).

Based on Defendants' willful and deliberate infringement and dilution of the LOTERIA® Marks, and to deter such conduct in the future, it is also appropriate that Plaintiffs be awarded punitive damages.

Additionally, the request for an injunction preventing Defendants to further use, sell or promote any Plaintiffs' trademark or confusingly similar trademarks, service mark, name, logo, design or source designation, as well as passing off, laming off, or assisting in passing off or palming off Defendants' goods or services as those of Plaintiffs, or otherwise continuing any and all acts of unfair competition as alleged in the Complaint and prayers for relief are not monetary in nature but are necessary to stop the infringing activity of Defendants.

Finally, the request to recall, impound or destroy the offending LOTERIA® bingo card games as specified in the request for relief are not monetary in nature but are necessary to stop the Defendants from continuing to profit from these unlawful infringing activities.

Thus, when considering the seriousness of the Defendants' conduct in relation to the amount of money at stake, this factor weighs in favor of granting default judgment.

### 4.  There Is No Possibility of a Genuine Issue of Material Fact

The fifth Eitel factor weighs the possibility of a dispute regarding any material facts in the case. Eitel, 782 F.2d at 1472-73. Plaintiffs has established there is no possibility of a genuine issue of material fact because Defendants' defaults establish as true the allegations of material fact in Plaintiffs' Complaint. "Thus, no dispute has been raised regarding the material averments of the complaint, and the likelihood that any genuine issue may exist is, at best, remote. This factor therefore favors the entry of default." Philip Morris U.S.A. Inc. v. Castworld Prods., 219 F.R.D. 494, 500 (C.D. Cal. 2003).

### 5. The Default Entered Against Defendant Did Not Result from Excusable Neglect

The sixth Eitel factor considers the possibility that default resulted from excusable neglect. Eitel, 782 F.2d at 1473. That is not the case here. Defendants were served with the Summons and Complaint but they decided to file an Answer only after the Clerk entered a Default. The rights to contest the allegations of the Complaint are totally cut off after the entrance of a Default. Accordingly, the Judge directed the Clerk to strike the late Answer of Defendants. The failure of Defendants in answering the Complaint in a timely matter favors the Entry of Default.

MOTION FOR DEFAULT JUDGMENT

**6. The Policy Favoring Adjudication of Disputes on the Merits Does Not Weigh Against Default Judgment**

Finally, the seventh Eitel factor does not weigh against Plaintiffs' Motion because failure to participate in litigation prevents the Court from considering this dispute on the merits. See Philip Morris, 219 F.R.D. at 501 ("Defendant's failure to answer [Plaintiff's] Complaint makes a decision on the merits impractical, in not impossible. Under Federal Rule of Civil Procedure 55(a), termination of a case before hearing on the merits is allowed whenever a defendant fails to defend an action.' This is precisely what occurred in the present case. Therefore, the seventh Eitel factor does not preclude the Court from entering default judgment against Defendant.") (quoting PepsiCo Inc. v. Cal. Sec. Cans., 238 F.Supp.2d at 1177).

**V. PLAINTIFFS PRAYERS AND REQUESTED RELIEF**

WHEREFORE, the Plaintiffs pray that:

1. Defendants and all their agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, thorough, or under authority from Defendants, or in concert or participation with Defendants be enjoined preliminarily and permanently, from: (a). Using any trademark, service mark, name, logo, design or source designation if any kind on or in connection with Defendants' goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to, or in any way similar to the trademarks or trade dresses of Plaintiffs; (b). Using a trademark, trade dress, service mark, name, logo, design or source designation of any kind on or in connection with Defendants' goods or services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Plaintiffs, or are sponsored or authorized by Plaintiffs or are in any way connected or related to Plaintiffs; (c). Using any trademark, trade dress, service mark, name, logo, design or source designation of any kind on or in connection with Defendants' goods or services that dilutes or is likely to dilute the distinctiveness of the trademarks, trade dress, service marks, names, or logos of Plaintiffs; and (d). passing off, laming off, or assisting in passing off or palming off Defendants' goods or services as those of Plaintiffs, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint;

2.   Defendants be ordered to recall all products bearing the LOTERIA® Marks or any other confusingly similar variation thereof, which have been shipped by Defendants or under their authority, to any customer, including, but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each customer a copy of this Court's order as it relates to said injunctive relief against Defendants;

3.   Defendants be ordered to deliver up for impoundment and for destruction all board games, cards, bingo cards, bags, boxes, labels, tags, signs, packages, receptacles, advertising, sample books, promotional material, stationery or other materials in the possession, custody, or under control of Defendants that are found to adopt, to infringe, or to dilute any of the LOTERIA® Marks or that otherwise unfairly compete with Plaintiffs and their products and services;

4.   Plaintiffs be awarded all damages caused by the acts forming the basis of the Complaint;

5.   Defendants be required to pay to Plaintiffs the costs of this action and its reasonable attorneys' fees pursuant to 15 U.S.C. §1117(a) and the state statutes cited in the Complaint;

6.   Plaintiffs be awarded all the damages caused by the Aranda Cervantes brothers and GMD's intentional interference with Plaintiffs' former contractual relationship with Northgate;

7.   Because of Defendants' use of counterfeit mark, Plaintiffs be awarded trebled damages according to 15 U.S.C. §1117(b);

8.   Plaintiffs be awarded Defendant's enhanced profits as provided for by 15 U.S.C. §1117(a);

9.   Specifically, Plaintiffs be awarded $110,347.00 as lost income (calculated accordingly to **Exhibit C,** the declarations of Luis Landin and the declaration of Jorge Landin), plus the disgorgement on Defendants' profits arising out of the infringing activities to be determined on the number of sales made by Defendants;

10.  Plaintiffs be awarded the amount of a reasonable royalty that they would have earned if Defendants were lawfully licensed;

11.  Plaintiffs be awarded corrective advertising to compensate and assist in the reversal of any negative associations resulting from the Defendants' infringing actions;

12.  Statutory damages in the amount of not less than $1,000.00 per mark according to 15 U.S.C. §1117(c).

**CONCLUSION**

Plaintiffs Martha Maria Sanchez Quiroz, Don Clemente Inc., and Pasatiempos Gallo S.A. de C.V., hereby respectfully requests this Court to enter default judgment as to each of the Defendants Alejandro Aranda Cervantes, Oscar Aranda Cervantes, and General Merchandise Distribution.

Date:   May 28, 2021.                    Respectfully submitted

**NOLI IP SOLUTIONS P.C.**

By:   _/S/Mariana Paula Noli_
Mariana Paula Noli, Esq.
CA State Bar 247369
Attorney for Plaintiffs

### FEDERAL COURT PROOF OF SERVICE
Martha Maria Sanchez Quiroz, et al v. Alejandro Aranda Cervantes et al.
**Case No. 5:21-cv-00268-JWH-SHK**

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and not a party to the action. My business address is 5030 Bella Collina, Oceanside, CA 92056. I am employed in the office of a member of the bar of this Court at whose direction the service was made. On May 28, 2021, I served the following document(s): **NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

### SEE ATTACHED SERVICE LIST

The documents were served by the following means:

 (BY U.S. MAIL) I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above and I deposited the sealed envelope or package with the U.S. Postal Service, with the postage fully prepaid.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct. Executed on May 28, 2021, at Oceanside, California.

**NOLI IP SOLUTIONS P.C.**

By: */S/Mariana Paula Noli*
    Mariana Paula Noli, Esq.
    CA State Bar 247369
    Attorney for Plaintiffs

SERVICE LIST

Martha Maria Sanchez Quiroz, et al v. Alejandro Aranda Cervantes et al.

**Case No. 5:21-cv-00268-JWH-SHK**

ALEJANDRO ARANDA CERVANTES

819 N. Oakdale Avenue, Rialto, CA 92376.

OSCAR ARANDA CERVANTES

819 N. Oakdale Avenue, Rialto, CA 92376.

GENERAL MERCHANDISE DISTRIBUTION

819 N. Oakdale Avenue, Rialto, CA 92376.

MOTION FOR DEFAULT JUDGMENT