# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA MARIA SANCHEZ QUIROZ, a Mexican individual; DON CLEMENTE INC., a Texas Corporation; and PASATIEMPOS GALLO S.A. de C.V., a Mexican Corporation,<br><br>    Plaintiffs,<br><br>v.<br><br>ALEJANDRO ARANDA CERVANTES, an individual; OSCAR ARANDA CERVANTES, an individual; and GENERAL MERCHANDISE DISTRIBUTION, a California entity,<br><br>    Defendants. | Case No. 5:21-cv-00268-JWH-SHKx<br><br>**ORDER ON MOTION FOR DEFAULT JUDGMENT [ECF No. 22]** |

Before the Court is the motion of Plaintiffs Martha Maria Sanchez Quiroz; Don Clemente, Inc.; and Pasatiempos Gallo S.A. de C.V., for default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure.[1] The Court conducted a hearing on the Motion on June 25, 2021. After considering the papers filed in support, and in the absence of any opposition, the Court **GRANTS** the Motion **in part** and **DENIES** it **in part**, as set forth herein.

## I.  BACKGROUND

### A.    Procedural Background

Plaintiffs filed the Complaint commencing this action on February 16, 2021.[2] In their Complaint, Plaintiffs assert the following five claims for relief against Defendants Alejandro Aranda Cervantes, Oscar Aranda Cervantes, and General Merchandise Distribution:  (1) Trademark Infringement, 15 U.S.C. § 1114(1); (2) Unfair Competition, 15 U.S.C. § 1125(a)(1)(a); (3) Dilution, 15 U.S.C. § 1125(c); (4) California Unfair Competition, Cal. Bus. & Prof. Code § 17200; and (5) Tortious Interference.  Based upon those claims, Plaintiffs request that the Court award the following remedies:  a permanent injunction enjoining Defendants from violating Plaintiffs' intellectual property and trademark rights; monetary damages and the disgorgement of all funds received from Defendants' infringing activities; costs of bringing this action; and other and further relief as the Court may determine to be just and necessary.

Plaintiffs timely served process on each Defendant on March 30.[3] Plaintiffs sought the entry of default against Defendants,[4] and the Clerk of the

---

[1]  Pls.' Mot. for Default J. (including its attachments) (the "Motion") [ECF No. 22].

[2]  See Pls.' Compl. (the "Complaint") [ECF No. 1].  Unless otherwise indicated, all dates are in 2021.

[3]  See Proofs of Service [ECF Nos. 10, 12, & 14].

[4]  Pls.' Mot. for Entry of Default J. (the "Default Motion") [ECF No. 15].

Court entered Default on April 30.[5] On May 6, Defendants attempted to file an Answer to the Complaint[6]—six days after the Clerk entered Defendants' default. On May 19, the Court directed the Clerk to strike Defendants' untimely Answer.[7] Plaintiffs filed the instant Motion on May 28. Defendants did not file any opposition, timely or otherwise. On June 25, the Court held a hearing on the instant Motion.[8] Counsel for Defendants did not make an appearance.

**B.     Factual Allegations**

Plaintiffs' business encompasses the production, sale, and licensing of their exclusive rights to their famous LOTERIA® board game and playing cards. LOTERIA® is a game of chance that uses a deck of cards with images.[9] The mark LOTERIA® as well as the images of each individual card of the game are federally registered as Plaintiffs' trademarks or trade dress (the "LOTERIA Marks").[10]

Plaintiffs' LOTERIA® products and services have achieved great success.[11] Since their inception in 1887, Plaintiffs' unique images in bingo cards and board games have grown to be the world's largest and most successful Mexican bingo card game, with millions of items sold worldwide.[12] Thus, the consuming public has come to identify Plaintiffs as the source of both the bingo card game and of apparel products sold under the LOTERIA® Marks.[13]

---

[5]   Default by Clerk (the "Default") [ECF No. 17].
[6]   Defs.' Ans. [ECF No. 19].
[7]   Notice of Discrepancy and Order [ECF No. 21].
[8]   *See* Min. of Video Hearing re Mot. for Def. J. [ECF No. 23].
[9]   Complaint ¶ 23.
[10]  *See* Complaint, Ex. A ("Exhibit A") [ECF No. 1-1].
[11]  Complaint ¶ 22.
[12]  *Id.* at ¶ 25.
[13]  *Id.*

In 2001, Plaintiffs hired Defendants the Aranda Cervantes brothers to serve as their agents. From 2001 until 2010, Plaintiffs authorized the Aranda Cervantes brothers to assist with the distribution of LOTERIA® products within the United States.[14] In 2010, the business relationship between Plaintiffs and the Aranda Cervantes brothers ended and the Aranda Cervantes brothers were no longer authorized to act as Plaintiffs' agents.[15]

In 2000, before Plaintiffs began working with the Aranda Cervantes brothers, Plaintiffs sold LOTERIA® products to non-party the Northgate Gonzalez Markets, Inc. d/b/a North Gonzalez Markets ("Northgate").[16] In 2010, the same year that Plaintiffs' relationship with the Aranda Cervantes brothers ended, Northgate stopped purchasing Plaintiffs' LOTERIA® products.[17] Plaintiffs spent the next several years seeking the resumption of Northgate's business.[18] It was not until 2019, however, that Plaintiffs discovered why Northgate stopped buying from them: Northgate was instead purchasing bingo card game products from the Aranda Cervantes brothers.[19] Those bingo card game products (the "Northgate Products") were not produced by Plaintiffs, but they were identified as "LOTERIA GIGANTE" and "LOTERIA JUMBO."[20] Moreover, those products bore identical reproductions of the LOTERIA® Marks.[21] Plaintiffs responded by transmitting cease-and-desist letters to Northgate and to the Aranda Cervantes brothers.[22]

---

[14] *Id.* at ¶¶ 26 & 27.
[15] *Id.* at ¶ 27.
[16] *Id.* at ¶ 2, 26, & 28.
[17] *Id.* at ¶ 28.
[18] *Id.* at ¶ 29.
[19] *Id.*
[20] *Id.* at ¶ 31; Ex. D [ECF No. 1-4].
[21] *Id.*; *compare* Ex. A [ECF No. 1-1] *with* Ex. D.
[22] *Id.* at ¶ 6.

Plaintiffs now allege that the Aranda Cervantes brothers either induced Northgate to stop purchasing Plaintiffs' products or induced Northgate into believing that Plaintiffs produced the Northgate Products.[23]

Plaintiffs allege that the Aranda Cervantes brothers intentionally misidentified the Northgate Products to mislead and deceive customers into believing that Plaintiffs produced those products.[24] Plaintiffs further allege that the Aranda Cervantes brothers' continued misappropriation of the LOTERIA® Marks (1) is causing irreparable harm to the goodwill symbolized by the LOTERIA® Marks and their reputation for quality;[25] and (2) is likely to confuse customers who think that they are buying Plaintiffs' products.[26] Plaintiffs attribute a $15,000 annual decrease in revenue to the loss of business from Northgate.[27]

## II.  LEGAL STANDARD

A court may enter default judgment following the entry of default by the Clerk of the Court.  Fed. R. Civ. P. 55(b).  This Court's Local Rules require a plaintiff's application for default judgment to be accompanied by a declaration that conforms to the requirements of Rule 55(b) and that sets forth the following information:

> (1) when and against which party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person; (4) that the Servicemembers Relief Act does not apply; and (5) that

---

[23]    *Id.* at ¶ 41.
[24]    *Id.* at ¶ 33.
[25]    *Id.* at ¶ 37.
[26]    *Id.* at ¶ 38.
[27]    *Id.* at ¶ 43.

notice of the application has been served on the defaulting party, if required.

L.R. 55-1.

The decision to enter default judgment is left to the sound discretion of the district court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092-93 (9th Cir. 1980). In *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986), the Ninth Circuit set forth the following factors for consideration in determining whether to grant default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong possibility underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471-72.  Upon the entry of default, the well-pleaded factual allegations of a complaint are deemed true; however, allegations pertaining to the amount of damages must be proven. *TeleVideo Systems Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987). A plaintiff is required to provide evidence of its damages, and a court may order a full evidentiary hearing or may rely on only the declarations submitted by the plaintiff. Fed. R. Civ. P. 55(b)(2). Further, the damages that the plaintiff seeks in the default judgment must not "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

### III. DISCUSSION

To obtain the entry of default judgment in their favor, Plaintiffs must meet the procedural requirements described above and must establish that, on balance, the *Eitel* factors weigh in their favor.

### A. Procedural Requirements

Plaintiffs have satisfied the procedural requirements for the entry of default judgment against Defendants. Pursuant to Rule 55, Plaintiffs petitioned for the entry of default judgment after the Clerk entered Defendants' default.[28] Additionally, the Noli Declaration sets forth the information required by this Court's Local Rules.[29] Furthermore, service of written notice of the application for default judgment is required "[i]f the party against whom a default judgment is sought has appeared personally or by a representative." Fed. R. Civ. P. 55(b)(2). The Noli Declaration demonstrates that Plaintiffs served Defendants with the instant Motion via email and overnight mail on May 28.[30]

Accordingly, Plaintiffs have complied with Rule 55(b)(2) and L.R 55-1.

### B. *Eitel* Factors

#### 1. Possibility of Prejudice to Plaintiffs

The first *Eitel* factor considers whether the plaintiff will be prejudiced if default is not entered. This factor favors granting the Motion. The facts that Plaintiffs allege in their Complaint are more than sufficient to establish that Plaintiffs will suffer prejudice in the form of, among other things, Defendants' sale and distribution of the infringing product that also dilutes Plaintiffs' trademark rights. Plaintiffs will also continue to suffer economic damages from the Aranda Cervantes brothers' tortious interference with Plaintiffs' relationship with Northgate. Furthermore, if the Motion is not granted, then Plaintiffs "will likely be without other recourse for recovery." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

---

[28] *See generally* Default Motion; Default.
[29] *See* Decl. of Mariana Paula Noli in Supp. of the Motion (the "Noli Declaration") [ECF No. 22-1] ¶¶ 2–6.
[30] *Id.* at ¶ 6.

### 2. Merits of Plaintiffs' Claim and Sufficiency of Complaint

The second and third *Eitel* factors assess the merits of the plaintiffs' substantive claim and the sufficiency of the complaint. These factors require the plaintiff to state a claim upon which it may recover. *See, e.g.*, *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

#### a. Trademark Infringement

Under the Lanham Act, "any person who shall, without the consent of the registrant—use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive shall be liable in civil action." 15 U.S.C. § 1114(a).

Here, Plaintiffs have a valid claim for trademark infringement because the unauthorized use of Plaintiffs' trademarks is a direct violation of that statute. Plaintiffs properly registered with the USPTO their LOTERIA® Marks and their trade dress in the playing cards of the LOTERIA® game.[31] Plaintiffs allege that Defendants' use of confusingly similar imitations of the LOTERIA® Marks causes confusion, deception, and mistake by creating the false and misleading impression that Defendants' products are manufactured or distributed by Plaintiffs, or are otherwise associated or connected with Plaintiffs. Furthermore, Plaintiffs submitted evidence showing that Defendants produced or purchased board cards that are identical or confusingly similar to the ones protected by Plaintiffs' LOTERIA Marks, thus constituting "counterfeit" marks under 15 U.S.C. § 1116(B)(ii).[32]

---

[31] *See* Exhibit A.
[32] *See* Complaint, Ex. D ("Exhibit D") [ECF No. 1-4]; *id.*, Ex. E ("Exhibit E") [ECF No. 1-5].

Plaintiffs allege that Defendants' activities are deceptive and that they have caused, and will continue to cause, a likelihood of confusion among members of the trade and the public. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiffs' federally registered LOTERIA® Marks. Defendants were aware of the LOTERIA Marks because Defendants had a past relationship with Plaintiffs that involved the sale of the LOTERIA® games. Notwithstanding having actual notice arising from their work relationship with Plaintiffs, and also constructive notice due to Plaintiffs' registrations of the LOTERIA® Marks, Defendants have been selling, promoting, and marketing a product that reproduces Plaintiffs' LOTERIA® Marks without authorization from Plaintiffs. Plaintiffs claim that Defendants have made and will continue to make substantial profits and gain.[33] Conversely, Plaintiffs have lost market share because consumers were misled about the origin of the two products.

Accordingly, Plaintiffs have alleged sufficient facts and have adduced sufficient evidence to support their claim for Trademark Infringement under 15 U.S.C. § 1114.

      **b.**    **Unfair Competition**

Plaintiffs also have a meritorious claim under federal unfair competition law based upon Defendants' false representations, false descriptions, and false designations of origin of their goods in violation of 15 U.S.C. § 1125(a). That statute provides, in relevant part, as follows:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false

---

[33] Complaint ¶ 49.

designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

    (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or . . . ,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A).

    Plaintiffs allege that Defendants use a reproduction or colorful imitation of the LOTERIA® Marks and symbols, which is likely to cause confusion and mistake, or to deceive consumers with respect to the affiliation, connection, association, origin, approval, or sponsorship between Plaintiffs and the offending bingo card game. Plaintiffs further allege that Defendants' activities have confused and deceived, and in the absence of an injunction will confuse and deceive, members of the trade and public. Defendants' activities have, additionally, caused injury to Plaintiffs' goodwill and reputation as symbolized by the LOTERIA® Marks, for which Plaintiffs have no adequate remedy at law. Plaintiffs allege that Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the LOTERIA® Marks, causing irreparable injury to Plaintiffs. Defendants are aware of the customer confusion because Defendants were familiar with Plaintiffs' LOTERIA® Marks in view of their previous business relationship with Plaintiffs involving the sale and distribution of LOTERIA® games. Finally, Defendants have not attempted to mitigate that customer confusion, and, in the absence of an injunction, Defendants will continue to violate 15 U.S.C. § 1125(a).

Accordingly, Plaintiffs have alleged sufficient facts and provided sufficient evidence to support their claim for Unfair Competition under 15 U.S.C. § 1125(a).

### c. Trademark Dilution

Federal trademark law also provides protection against trademark dilution. *See* 15 U.S.C. § 1125(c)(2)(B). Here, Plaintiffs showed that they have continuously promoted and used the LOTERIA® Marks in the United States and throughout the world. Plaintiffs allege that the LOTERIA® Marks had become a famous and well-known symbol of Plaintiffs' goods long before Defendants offered the offending board games and bingo card games for sale. Plaintiffs showed that Defendants are making commercial use of at least one mark that dilutes, and is likely to dilute, the distinctiveness of the LOTERIA® Marks by eroding the public's exclusive identification and association of the LOTERIA® Marks with Plaintiffs, thus tarnishing and degrading the positive associations and prestigious connotations of the Marks, and otherwise degrading the capacity of the Marks to identify and distinguish goods and services. Plaintiffs showed that the degree of similarity between the LOTERIA® Marks and the infringing products is remarkable, and, in some images, the infringing products show the exact same image displayed in the LOTERIA® Marks.[34]

Accordingly, Plaintiffs have alleged sufficient facts and have provided sufficient evidence to support their claim for Trademark Dilution under 15 U.S.C. § 1125(c)(2)(B).

---

[34] *See* Exhibit E.

### d. State Trademark Dilution and Injury to Business Reputation

For the reasons stated in the preceding section, Plaintiffs have sustained their burden to establish the merits of their claims for Trademark Dilution and Injury to Business Reputation under California law.

### e. Common Law Trademark Infringement and Unfair Competition

Plaintiffs also have common law trademark rights. Plaintiffs allege that those rights were established before Defendants began promoting and selling Plaintiffs' products to Northgate. Plaintiffs further allege that Defendants acted with full knowledge of Plaintiffs' use of, and statutory and common law rights to, the LOTERIA® Marks without regard to the likelihood of confusion of the public created by Defendants' activities. Plaintiffs allege that Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the LOTERIA® Marks, which has caused irreparable injury to Plaintiffs.

Accordingly, Plaintiffs have alleged sufficient facts and have provided sufficient evidence to support their claim for Common Law Trademark Infringement and Unfair Competition.

### f. Tortious Interference

Under California Law, a claim for tortious interference consists of the following five elements: (1) the existence of a valid and enforceable contract between plaintiff and another; (2) defendant's awareness of the contractual relationship; (3) defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other caused by defendant's wrongful conduct; and (5) damages. *See Hahn v. Diaz-Barba*, 194 Cal. App. 4th 1177, 1196 (2011).

Here, Plaintiffs have presented evidence showing that Northgate had a contractual relationship with Plaintiffs involving the purchase and distribution of Plaintiffs' LOTERIA® games in the United States. Plaintiffs allege that Defendants were aware of the business relationship between Plaintiffs and Northgate because the Aranda Cervantes brothers acted as agents for Plaintiffs during the period between 2001 and 2010, and they sold Plaintiffs' LOTERIA® bingo games to Northgate. Plaintiffs further allege that Defendants prevented the business relationship between Plaintiffs and Northgate from continuing by inducing Northgate to buy from Defendants while deceiving Northgate to believe that it was still buying Plaintiffs' products. Moreover, Defendants knew that preventing Northgate from buying Plaintiffs' products would end the previous business relationship between Northgate and Plaintiffs. Northgate breached the relationship with Plaintiffs because of Defendants' wrongful misconduct. As evidenced by the letter of Bruce R. Brandlin, Vice President/Corporate Counsel of Northgate, Northgate was buying the LOTERIA JUMBO bingo game from Defendants.[35] Plaintiffs allege that as a result of Defendants' actions, Plaintiffs' sales decreased and Plaintiffs suffered serious financial harm from the lost sales to Northgate, which was buying an average of $15,000 per year of product from Plaintiffs.[36] Plaintiffs also allege that absent Defendants' actions, Northgate would have continued to buy Plaintiffs' products, and, thus, Defendants' actions were the substantial cause of Plaintiffs' harm.

Accordingly, Plaintiffs have alleged enough facts and have submitted sufficient evidence to support their claim for Tortious Interference.

---

[35] *See* Exhibit B.

[36] *See* Complaint, Ex. C ("Exhibit C") [ECF No. 1-3].

In sum, the Court finds that the second and third *Eitel* factors weigh in favor of the entry of default judgment.

### 3. Sum of Money at Stake in the Action

With respect to the fourth *Eitel* factor, "[d]efault judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014).

Here, Plaintiffs request damages in the amount of $110,347 in lost income[37] and disgorgement of Defendants' profits arising out of the infringing activities to be determined based upon the number of sales made by Defendants. Those damages are proportional to the misconduct of Defendants because the lost income is the direct result of the lost sales by Plaintiffs to Northgate Gonzalez Market.

Because Defendants have been selling and promoting products bearing counterfeit marks, it is appropriate for Plaintiffs to be awarded treble damages pursuant to 15 U.S.C. § 1117(b).[38] Plaintiffs do not specify the amount of the treble damages, but the statute is unambiguous: "the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater." 15 U.S.C. § 1117(b). Accordingly, the Court assesses damages as $331,041.[39]

Plaintiffs seek statutory damages in the amount of not less than $1,000 per each counterfeit mark, as provided by 15 U.S.C. § 1117(c).[40] Plaintiffs' request appears to rely on a misreading of the statute, which allows for actual

---

[37] *See id.*

[38] *See* Motion 14:19-22.

[39] The Court simply multiplied by three the actual damages of $110,347: $110,347 x 3 = $331,041.

[40] *Id.* at 14:27-28.

-14-

damages *or* statutory damages.[41]  Plaintiffs also seek punitive damages, but they cite no statutory authority or case law to support such a request.[42]  Accordingly, the Court will **GRANT** the requested trebled damages, but **DENY** the request for statutory and punitive damages.

Additionally, Plaintiffs' request for an injunction preventing Defendants from further use, sale, or promotion of any of Plaintiffs' trademark or confusingly similar trademark, service mark, name, logo, design, or source designation, or passing off, laming off, or assisting in passing off, or palming off Defendants' goods or services as those of Plaintiffs, is not monetary in nature but is necessary to stop the infringing activity of Defendants.

Finally, Plaintiffs' request to recall, impound, or destroy the offending bingo card games as set forth in their request for relief is not monetary in nature but is necessary to stop the Defendants from continuing to profit from their unlawful infringing activities.

Thus, considering the seriousness of the Defendants' conduct in relation to the amount of money at stake, the fourth *Eitel* factor favors the entry of default judgment.

### 4. Possibility of a Dispute Concerning Material Facts

The fifth *Eitel* factor "considers the possibility that material facts are disputed."  *Vogel*, 992 F. Supp. 2d at 1012.  "Since [Plaintiffs'] factual allegations are presumed true and [Defendants have] failed to oppose the

---

[41]  *See* Proposed Order re Default J. [ECF No. 22-2] 14:6-9 ("Since Defendants have been selling and promoting products bearing counterfeit marks, it is appropriate for Plaintiffs to be awarded the amount of trebled damages according to 15 U.S.C. § 1117(b) as well as an award of statutory damages in the amount not less than $1,000.00 per each counterfeit mark as provided by 15 U.S.C. § 1117(c).); *see also* 15 U.S.C. § 1117(c) ("the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, ***instead of actual damages*** and profits under subsection (a), an award of statutory damages . . ." (emphasis added)).

[42]  Motion 12:1-3.

motion, no factual disputes exist that would preclude the entry of default judgment." *Id.* at 1013. This factor therefore favors the entry of default judgment.

### 5. Whether the Default Was Due to Excusable Neglect

The sixth factor addresses whether default was due to excusable neglect. Here, the record indicates that Defendants were properly served with process, the Default Motion, and the instant Motion. Accordingly, this factor favors the entry of default judgment.

### 6. Strong Policy Favoring Decisions on the Merits

Finally, although "[c]ases should be decided upon their merits whenever reasonably possible," *Eitel*, 782 F.2d at 1472, default judgment may be entered where a defendant fails to appear. *See, e.g.*, *PepsiCo*, 238 F. Supp. 2d at 1177. This factor does not preclude the entry of default judgment.

In sum, the *Eitel* factors weigh in favor of the entry of default judgment.

## C. Remedies

In their Motion, Plaintiffs seek (1) a permanent injunction against Defendants, prohibiting them from engaging in future violations of their intellectual property and trademark rights; (2) the forfeiture or destruction of infringing goods; (3) monetary compensation for actual damages (from the lost sales) and Defendants' actual profits made by from using the infringed trademarks and costs; and (4) Plaintiffs' attorney fees.

### 1. Injunctive Relief

As stated in the Complaint and above, Plaintiffs request that Defendants be enjoined preliminarily and permanently from: (a) using any trademark, trade dress, service mark, name, logo, design, or source designation of any kind on or in connection with Defendants' goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to, or in any way similar to the trademarks or trade dress of Plaintiffs; (b) using a trademark, trade

dress, service mark, name, logo, design, or source designation of any kind on or in connection with Defendants' goods or services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Plaintiffs, or are sponsored or authorized by Plaintiffs or are in any way connected or related to Plaintiffs; (c) using any trademark, trade dress, service mark, name, logo, design, or source designation of any kind on or in connection with Defendants' goods or services that dilutes or is likely to dilute the distinctiveness of the trademarks, trade dress, service marks, names, or logos of Plaintiffs; and (d) passing off, laming off, or assisting in passing off or palming off Defendants' goods or services as those of Plaintiffs, or otherwise continuing any and all acts of unfair competition.

The Court may "grant injunctions, according to the principles of equity and upon such terms as the court deems reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. § 1116(a). "[A]ctual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action." *Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) (citations omitted). "To obtain a permanent injunction, the plaintiff must show: (1) it has suffered irreparable injury; (2) remedies at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the parties, a remedy in equity is appropriate; and (4) the public interest would not be disserved by a permanent injunction." *Tapatio Foods, LLC v. Rodriguez*, 2019 WL 6168416, at *5 (E.D. Cal. Nov. 20, 2019) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391–92 (2006)). In the Ninth Circuit, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by the threat of continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).

Here, in considering the totality of the circumstances to determine the likelihood of future violations, the Court finds that Plaintiffs have established a reasonable likelihood that Defendants will engage in future violations of Plaintiffs' intellectual property and trademark rights. The totality of the circumstances of the alleged violations reveals a significant likelihood that Defendants will engage in future violations; therefore, an injunction against further violations is proper.

### 2. Destruction of Infringing Goods

Plaintiffs request that Defendants be ordered to recall all products bearing the LOTERIA® Marks or any other confusingly similar variation thereof, which have been shipped by Defendants or under their authority, to any customer, including, but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each customer a copy of this Court's order as it relates to said injunctive relief against Defendants.

Defendants are ordered to deliver up for impoundment and for destruction all board games, cards, bingo cards, bags, boxes, labels, tags, signs, packages, receptables, advertising, sample books, promotional material, stationery or other materials in the possession, custody, or under control of Defendants that are found to adopt, to infringe, or to dilute any of the LOTERIA® Marks or that otherwise unfairly compete with Plaintiffs and their products and services.

### 3. Monetary Relief

Plaintiffs request that Defendants be compelled to account to Plaintiffs for any and all profits derived by Defendants from the sale or distribution of infringing goods as described in the Complaint, and that Plaintiffs be awarded all damages caused by the acts forming the basis of the Complaint for intentionally use of confusingly similar imitations of the LOTERIA® Marks. Specifically, Plaintiffs request an award of $110,347 as lost income. Plaintiffs do not

articulate the amount of the treble damages to which they are entitled, but, as discussed above, the Court calculates that number at $331,041.

Plaintiffs additionally request the disgorgement on Defendants' profits arising out of Defendants' infringing sales or the amount of a reasonable royalty that Plaintiffs would have earned if Defendants' use of the infringing marks were lawfully licensed.

As discussed above, the Court finds that treble damages is reasonable and appropriate. The Court will not, however, grant the requests for statutory and punitive damages.

### 4. Costs and Attorneys' Fees

Finally, Plaintiffs request that the Court award reasonable costs and attorneys' fees for bringing this action. However, in the Motion, Plaintiffs do not state the amount of their costs and attorneys' fees, nor did Plaintiffs' counsel submit an itemization of those costs and fees. Accordingly, the Court **DENIES** Plaintiffs' request for costs and attorneys' fees.

### IV.  CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. Plaintiffs' Motion is **GRANTED in part** and **DENIED in part**.
2. Judgment shall issue consistent with this Order.

**IT IS SO ORDERED.**

Dated: November 17, 2021

John W. Holcomb
UNITED STATES DISTRICT JUDGE